UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGEY BAYADOVSKIY,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | No. 2:24-cv-3687-SCR<br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, the undersigned grants Plaintiff's motion for summary judgment, denies Defendant's cross-motion, and remands for further proceedings without compelling the Commissioner to award DIB.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on June 15, 2022, alleging disability beginning February 16, 2019. Administrative Record ("AR") 18.[2] The application was disapproved initially on

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); *Bowen v. City of New York*, 476 U.S. 467, 470 (1986).

[2] The AR is filed as ECF No. 9 (AR 1 to AR 999).

November 4, 2022, and on reconsideration on June 9, 2023. AR 18. On March 12, 2024, ALJ Carol Eckersen presided over a telephonic hearing on Plaintiff's challenge to the disapprovals. AR 31-63 (transcript). Plaintiff appeared with Svetlana Kumansky as counsel and testified at the hearing. AR 31, 36. Vocational Expert ("VE") "Ms. Frans" also testified. AR 31, 54.

On April 3, 2024, the ALJ issued an unfavorable decision, finding Plaintiff "not disabled" under the Act. AR 18-26 (decision), 27-30 (exhibit list). On November 12, 2024, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. AR 1-6 (decision and additional exhibit list).

Plaintiff initiated this action on December 23, 2024. ECF No. 1. The parties filed cross-motions for summary judgment based on the AR filed by the Commissioner. ECF Nos. 15 (Plaintiff's summary judgment motion), 19 (Commissioner's summary judgment motion). Plaintiff then filed a reply brief in support of his motion. ECF No. 22.

## II. FACTUAL BACKGROUND

Plaintiff was born on October 24, 1974 and accordingly, at age 44, was a younger person as of the alleged disability onset date. AR 25, 227; *see* 20 C.F.R §§ 404.1563(c). Plaintiff has finished two years of college and communicates in Russian. AR 219, 221. He sold stones for two different companies from January 2000 to July 2018, after which he worked in truck repair until February 2019. AR 221. Asserted conditions include diabetes, high cholesterol, pervasive joint pain, hypertension, and back pain, and the aftereffects of a heart attack. AR 220.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive[.]'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *see also Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quotation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

DIB is available for every eligible individual who is "disabled." 42 U.S.C. § 423(a)(1)(E). Aside from blind individuals over the age of 55, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A);

*see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

*Id.*, §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

*Id.*, §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

*Id.*, §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Id.*, §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

////

////

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2024.
>
> 2. The claimant has not engaged in substantial gainful activity since February 16, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: coronary artery disease, right shoulder strain, and cervical disc disease (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record … the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except as follows: The claimant can occasionally climb. He can frequently stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. He must avoid concentrated exposure to work hazards, such as moving machinery and unprotected heights.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on October 24, 1974 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563)
>
> 8. The claimant has at least a high school education (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from February 16, 2019, through the date of this decision (20 CFR 404.1520(g)).

AR 20-26.

/////

## VI. ANALYSIS

### A. The ALJ Improperly Limited the RFC Analysis to Severe Impairments

Plaintiff argues that the list of severe impairments during the second step of the DIB eligibility analysis should have included diabetes mellitus, particularly because it aggravated his coronary artery disease. ECF No. 15 at 6. Defendant first argues that because the ALJ found at least one severe impairment and proceeded to the next step, any failure to label a specific impairment as severe is harmless. ECF No. 19 at 3-4. Citing *Buck v. Berryhill*, Defendant asserts that Plaintiff "could not possibly have been prejudiced" because an RFC analysis "should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (citing 869 F.3d 1040, 1048-49 (9th Cir. 2017)).

Plaintiff's complaint, however, is that the ALJ then proceeded to ignore the effects of his diabetes during the RFC analysis. ECF No. 15 at 7-8. The decision supports Plaintiff's argument. At no point during the RFC analysis underlying the fifth finding does the ALJ reference Plaintiff's diabetes, medical records thereof, or any relevant symptoms like high A1c readings. ECF No. 22 at 5; AR 22-24. Although the RFC analysis should not be affected by which impairments are severe, Plaintiff has raised doubt as to whether it was in fact so affected.

Alternatively, Defendant argues that Plaintiff fails to identify any functional limitations that considering his diabetes would have added. ECF No. 19 at 4. Plaintiff has done this by framing the issue as whether his diabetes amplified any functional limitations caused by his coronary artery disease, which the ALJ did find severe. ECF No. 15 at 7-8; AR 20. He arguably does not even need to make this showing to demonstrate a reversible error. Courts have remanded denials for failure to consider the full list of impairments because this alone rendered the RFC determination "incomplete, flawed, and not supported by substantial evidence in the record." *Hill v. Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ conflated her analysis of impairment severity at step two with how impairments translate into RFC limitations at step four. Such an error is not harmless and alone merits remand.

////

**B. The ALJ Did Not Justify the Discounting of Subjective Testimony**

1. Testimony

Plaintiff testified that when working as an "unloader" for Bonus Surfaces from 2011 to 2018, he would unload various stones from distributors in the warehouse, manage the inventory, and load them into the clients' vehicles while supervising three other unloaders. AR 40-41. The weight of the stones ranged from 50 to 75 pounds. AR 41. Business slowed and there was less for him to do over time, until he quit to accept a better-paying job fixing and selling trucks. AR 41-42. The trucks he worked on were special trucks used to clean roads, and he was personally responsible for repairing the relevant hydraulic systems. AR 43. He would lift one 50-pound load per day along with a variety of smaller parts. AR 43-44.

Plaintiff stopped working in February 2019 after his heart attack and has not worked since, while his wife works full-time. AR 44-45. Plaintiff has since had a total of five stents placed across two surgeries to open his arteries. AR 45. After the first surgery placing two stents in February 2019, Plaintiff spent seven months with Cardiac Rehabilitation to do exercises to help his heart, which he continued doing after he was discharged. AR 45-46. He continued taking medication and saw his cardiologist monthly until his second heart attack in November 2022, by which he had also had three EKG stress tests. AR 46. Separately, Plaintiff underwent an X-ray and MRI scan to address issues with his neck and right arm. AR 47. Plaintiff had the other three stents placed after his second heart attack in November 2022. AR 47.

Plaintiff testified that he could walk for thirty minutes at a time before needing to rest for at least five to ten minutes, for a total walking time of about three hours. AR 47-48. Lower back pain radiates to his shoulder, preventing him from sitting for more than 20 minutes at a time. AR 48. Plaintiff estimated he can stay active for a total of three to four hours per day, having to otherwise sit or lie down. AR 52. He can only lift five pounds at a time and does not do any of the physical chores himself. AR 48-49. He goes grocery shopping with his wife and children, working from a list. AR 49. The family attends church for two two-hour periods on Sundays, and he attends 90-minute choir rehearsal every Thursday. AR 50. Aside from these weekly obligations, the main source of social interaction is visiting Plaintiff's mother eleven miles from

home and his in-laws seven miles from home. AR 50. Plaintiff confirmed he can drive. AR 37.

Plaintiff testified that the main issues preventing him from finding a new job are shortness of breath and frequent trips to the bathroom, caused by his elevated blood sugar levels and Type II diabetes. AR 50-51. Plaintiff was first diagnosed with diabetes in 2009 and has taken medication since, including Metformin when his blood sugar is above 300. AR 51-52. Plaintiff struggles to bend or twist at the waist, has pain in both knees, and sometimes loses leg sensitivity and control. AR 52-53.

2. ALJ Holding

The ALJ found that Plaintiff's testimony as to the intensity, persistence, and limiting effects of his symptoms was inconsistent with the record. AR 23. She acknowledged that during emergency treatment for the February 2019 myocardial infarction, doctors found evidence of "complex diffuse multi-vessel coronary disease[,]" hypokinesis in the distal inferior wall, and a severely diseased descending artery. AR 23. During a visit later that month, however, Plaintiff denied chest pain, edema, or irregular heartbeat. AR 23. Nor did the x-rays reveal evidence of acute cardiopulmonary issues. AR 23. Aside from some shoulder pain and reduced range of motion in October 2019, the ALJ recited normal physical findings from March 2019 through January 2021. AR 23.

The next recited abnormal finding was in September 2022, when Plaintiff reported shortness of break, fatigue, dizziness, and shoulder pain. AR 23. Dr. Singh diagnosed him with back pain, myocardial infarction, and joint pain, but the only abnormal finding was a restricted range of motion in the lumbar spine. AR 23. Normal results nevertheless persisted until June 2023, when x-rays revealed small degenerative osteophyte at several cervical discs and older fractures a few discs lower. AR 23. Plaintiff then underwent two more physical examinations without abnormal findings in September and November 2023. AR 23.

The ALJ's summary does end with two abnormal examination results in late 2023. Based on "abnormal myocardial perfusion study" in November and "exertional chest discomfort and some palpitations" in December, cardiologists adjusted Plaintiff's medication regimen. AR 23. Overall, however, the ALJ concluded that the record:

> reflected less severe complaints than alleged by claimant. The records show mostly intact examinations and functioning during the period at issue. The claimant has a documented cardiac impairment, though his sporadic complaints and treatment during the period at issue does not fully support the alleged severity. I find the treatment reports and objective evidence are inconsistent with allegations of ongoing, disabling symptoms and limitations.

AR 24.

The ALJ also held that Plaintiff's daily activities were inconsistent with the alleged limitations. AR 24. That Plaintiff admitted to "performing personal care tasks, completing household chores, driving a car, leaving the house alone, shopping in stores, and attending church" suggested that he "maintained significant capabilities." AR 24.

3. Governing Law

Evaluating a claimant's subjective testimony is a two-step process. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. *Id.* Second, if the claimant succeeds in providing objective evidence of the impairment and "there is no evidence of malingering," the ALJ can only reject the claimant's testimony about the severity of such symptoms if there are "'specific, clear and convincing reasons for doing so.'" *Id.* at 1014-15 (internal citations omitted); *see also Smartt v. Kijakazi*, 53 F.4 489, 494 (9th Cir. 2022) (applying this standard even "[w]hen objective medical evidence is inconsistent with a claimant's subjective testimony").

While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." *Thomas*, 278 F.3d at 958.

Evaluating the "intensity and persistence" of the symptoms of an impairment will involve considering all available evidence, including "medical history, the medical signs and laboratory findings, and statements about how…symptoms affect" the plaintiff. 20 C.F.R. § 404.1529(a). Relevant factors include, but are not limited to:

> (ii) The location, duration, frequency, and intensity of your pain or other symptoms; […]
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; [and]
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.);

20 C.F.R. § 404.1529(c). As to the fourth and fifth factors (i.e., "iv" and "v" directly above), the Ninth Circuit permits ALJs to consider "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (quoting *Fair*, 885 F.2d at 603); *see also Plummer v. Berryhill*, Case No. 2:16-cv-00753-AC, 2017 WL 2972461 at *6 (E.D. Cal. July 12, 2017) (agreeing with the ALJ that "failure to pursue recommended treatment discredited…[plaintiff's] subjective testimony.").

An ALJ should not penalize claimants "for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). An ALJ can, however, cite a claimant's daily routine to the extent that it is inconsistent with the degree of disability that plaintiff alleges. *See Molina*, 674 F.3d at 1113 (even where claimant's everyday activities reflect difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment).

4. The ALJ's Interpretation of the Medical History is Incomplete

Plaintiff argues that the ALJ fails to link any of the medical evidence summarized in the decision to any of the limitations asserted in Plaintiff's testimony. ECF No. 15 at 9. Plaintiff counts 24 alleged limitations followed by 55 discrete medical facts, with no attempt to explain which pieces of evidence contradict which purported limitations. *Id.* at 11.

Precise numbers aside, Plaintiff is correct that summarizing medical evidence does not constitute a standalone argument without identifying specific discrepancies between this evidence and Plaintiff's testimony. ECF No. 8 at 13 (citing *Triechler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014)). A "vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion, is insufficient[.]" *Contreras v. Saul*, 477 F.Supp.3d 1107, 1122 (S.D. Cal. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)). Accordingly, the court in *Contreras* found that an ALJ who summarized the record but "failed to identify *specific* statements from Plaintiff's testimony or functional report that were not credible" had not articulated the reason for discounting the testimony. 477 F.Supp.3d at 1121-22 (emphasis original).

By articulating all considered medical evidence in a single run-on paragraph without separating it by potential limitation, only to conclude they show "mostly intact examinations and functioning" and "sporadic complaints and treatment[,]" the ALJ made the same error here as in *Contreras*. AR 23-24. Defendant's response attempts to sort the evidence based on whether it discredits his allegations of increased blood sugar and urination, shortness of breath and chest pain, inability to control his leg, and disabling pain across this back, neck, and shoulder. ECF No. 19 at 6-7. Assuming *arguendo* that this would be sufficiently specific, the Court cannot uphold a decision based on *post hoc* rationale when the ALJ has the duty to articulate such reasoning. *Orn,* 495 F.3d at 630; *Connett*, 340 F.3d at 874.

The ALJ's analysis of the medical record was insufficient to discount subjective testimony.

5. <u>The ALJ's Analysis of Daily Activities is Insufficient to Discount Testimony</u>

The ALJ's decision finds Plaintiff's testimony inconsistent with the fact that he can complete personal care tasks and household chores, drive a car, leave the house alone, shop in stores, and attend church. AR 24 (citing AR 253-60). As an initial matter, the function report cited for these findings raises various caveats as to each. ECF No. 15 at 12. Plaintiff reported that most of his tasks had to be done with his nondominant left hand because of the pain in his

right. AR 254. The exception is for cooking, when he is so uncoordinated with his left hand that he must endure the pain. AR 255. He also asserted he needed breaks in between tasks due to the shortness of his breath. AR 254. Whether the ALJ considered these caveats in finding that such activities were inconsistent with purported limitations is unclear.

The larger issue, as Plaintiff also notes, is that an ALJ should not penalize claimants "for attempting to lead normal lives in the face of their limitations." ECF No. 15 at 12-13; *Reddick*, 157 F.3d at 722. An ALJ can cite a claimant's daily routine to the extent that it is inconsistent with the degree of disability that plaintiff alleges. *See Molina*, 674 F.3d at 1113 (even where claimant's everyday activities reflect difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment). In other words, an ALJ may rely on the fact that a plaintiff "engages in numerous daily activities involving skills that could be transferred to the workplace" if the ALJ "mak[es] specific findings relating to those activities." *Burch*, 400 F.3d at 680-81. Because the ALJ does not make any such findings, she has failed to adequately explain how they justify discounting Plaintiff's testimony.

6. The Errors Are Not Harmless

In *Stout*, the Ninth Circuit concluded that an error is harmless when it is "inconsequential to the ultimate nondisability determination." 454 F.3d at 1055. The Ninth Circuit has clarified that the "relevant inquiry…is not whether the ALJ would have made a different decision absent any error … it is whether the ALJ's decision remains legally valid, despite such error." *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008). Multiple reasons for a particular conclusion can render an error in one harmless because the others provide "a basis for the court to review the ALJ's decision[.]" *Id.* at 1163; *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (refusing to find an error harmless when "the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence'") (internal citations omitted). If an ALJ provides multiple "record-supported reasons for discrediting the claimant's testimony," an error in any one reason is harmless on its own. *Stout*, 454 F.3d at 1055 (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359

F.3d 1190, 1197 (9th Cir.2004)).

The ALJ gave two reasons for discounting Plaintiff's subjective testimony – inconsistencies with the medical record and with daily activities. As discussed above, the explanation as to both are deficient. Although the ALJ then proceeds to discuss the medical opinions of various doctors (*see infra*; AR 24), the decision does not suggest that these were used to discount the testimony. The ALJ therefore failed to provide a sufficient reason to discount testimony. This error is not harmless and merits reversal.

**C. The ALJ Did Not Err in Discounting Dr. Singh's Opinion**

1. Opinion and Holding

Following an examination on September 20, 2022, Dr. Troy Singh opined that Plaintiff could lift and carry 8 pounds frequently and 12 infrequently; stand and walk for 2-3 hours in an 8-hour day; sit for 6-8 hours in an 8-hour day; and ambulate to the extent needed for banking, shopping, and basic daily self-care. AR 24, 721, 726. To the extent that any of these tasks required bending or crouching, however, Dr. Singh found Plaintiff incapable of carrying them out at all. AR 24, 726.

The ALJ did not find this opinion credible based on inconsistencies with the record. She contrasted, for example, supposed "evidence of dyspnea during walking and severe back pain" during the examination with the lack of such abnormalities in Dr. Singh's other reports. AR 24. She then found the opinion "inconsistent with treatment records and objective evidence, such as evidence of normal range of motion in the bilateral shoulders, normal gait, negative Romberg testing, normal muscle strength, tone, and bulk, normal respiratory findings, and normal reflexes[.]" AR 24 (citing AR 721-26). She also contrasted this report against "repeated denials of chest pain and dyspnea and the generally intact examinations" during the period reflected in the record. AR 24 (citing AR 729-53, 941-58).

2. Governing Law

In evaluating medical opinion evidence for applications filed after 2017, ALJs give no specific evidentiary weight to any particular type of opinion or source, but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings

from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2).

Supportability and consistency are defined in the regulations as follows:

> Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). The Ninth Circuit has confirmed that the new regulatory framework eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. *Id.* In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.*

(citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

3. <u>The ALJ's Conflation of Consistency and Supportability is Itself Harmless</u>

Plaintiff first notes that the first set of reasons cited for finding the medical record "inconsistent" with Dr. Singh's opinion come from the same examination as the opinion. ECF No. 15 at 13. Specifically, it was during this examination that Plaintiff was observed to have a full range of motion in both shoulders (AR 724), normal gait and respiration with no signs of Romberg (AR 723), and normal muscle strength. ECF No. 15 at 13; AR 24. Plaintiff questions how an ALJ can presume to undermine an expert opinion based on the same findings used to make it. ECF No. 15 at 13-14.

This argument is born from a linguistic error the ALJ made. Whether Dr. Singh's discrete findings at the time of the examination supported conclusions he drew about Plaintiff's RFC speaks to the supportability of such conclusions. *See* 20 C.F.R. § 404.1520c(c)(1). Consistency focuses on whether the rest of the medical record, including observations made by Dr. Singh at different appointments, also lends itself to these conclusions. *See* 20 C.F.R. § 404.1520c(c)(2). That the ALJ used the word "inconsistent" throughout this paragraph obscures the fact that she actually analyzed the opinion's supportability before turning to consistency, both of which is required when discussing any opinion. *See* 20 C.F.R. § 404.1520c(b)(2); *see also Woods*, 32 F.4th at 793, n.4 (advising that "to avoid confusion in future cases, ALJs should endeavor to use these two terms of art—'consistent' and 'supported'—with precision.").

This requirement renders Plaintiff's subargument, that an ALJ cannot reinterpret the evidence in a medical opinion without falsely pretending to be a doctor (ECF No. 15 at 13-14), completely nonsensical. The Ninth Circuit has acknowledged "a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). Were that not so, independently assessing the supportability of a medical opinion would be impossible rather than a requirement. What Plaintiff is asking, that an ALJ not require a medical opinion to ever show its work, is a perspective with no support in the law.

4. <u>The Substantial Evidence Standard and Source-Level Articulation Favor the ALJ's Consistency Analysis</u>

With the more systemic argument rejected, Plaintiff turns to specific objections with how the ALJ analyzed Dr. Singh's opinion. He argues, for example, that the record does include references to chest pain and dyspnea notwithstanding the ALJ invoking "repeated denials" thereof. ECF No. 15 at 14; AR 24. Plaintiff further cites the fact that a November 2023 treadmill test's results had to be converted to lexiscan specifically because his chest pain kept him from hitting the target heart rate. ECF No. 15 at 11, 14; AR 995.

Defendant responds that the ALJ is relying on the same evidence that she summarized when rejecting Plaintiff's subjective testimony. ECF No. 19 at 11. This is somewhat supported by the ALJ citing Exhibits 5F and 8F, the same exhibits she previously cited for various denials of dyspnea or chest pain from October 2022 to November 2023. AR 23-24. Although a court cannot rely on *post hoc* rationale, it can uphold a decision written with "less than ideal clarity" if the ALJ's "path may reasonably be discerned." *See Molina*, 674 F.3d at 1121 (internal citations omitted).

Additionally, this summary was only inadequate for discounting plaintiff's subjective testimony because the reasons for doing so must be "specific, clear and convincing" if there is objective evidence of the impairment. *See supra* VI.B.3; *Garrison*, 759 F.3d at 1014-15. No such presumption exists when discussing the consistency of medical opinions, which is instead reviewed for substantial evidence. *See Reynoldson v. Comm'r of Soc. Sec.*, 649 F.Supp.3d 1114, 1120 (W.D. Wash. 2023). This requires not a preponderance of evidence, but rather enough that "a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 173 F.Supp.3d 989, 993 (E.D. Cal. 2016) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Virtually any ALJ involves some degree of ignoring some evidence in favor of other, and the fact that Plaintiff can now point to evidence contradicting the ALJ's determination is not enough to overturn it. *Batson*, 359 F.3d at 1193; *see also White v. Comm'r Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009) (noting that plaintiff's allegation of cherry-picking data "cuts both ways.")

Plaintiff further attempts to discredit the consistency findings in his reply brief by

focusing on issues the ALJ did not address when discounting Dr. Singh's opinion, like abnormal orthopedic findings and some strain on Plaintiff's right shoulder. ECF No. 22 at 12. The ALJ was not required to address each of these points. Source-level articulation permits an ALJ to consider all the medical opinions from a single medical source "together in a single analysis using the [five] factors listed" in the regulations, as opposed to "each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). Courts in this Circuit have held that this also excuses ALJs from considering "each aspect of a doctor's medical opinions on a line-by-line or opinion-by-opinion basis." *Jamie Allen W. v. O'Malley*, Case No. 4:23-CV-00202-REP, 2024 WL 1465924 at *7 (D. Idaho Apr. 4, 2024); *see also Kimberly C. v. Comm'r of Soc. Sec. Admin*, Case No. 3:24-cv-01624-CL, 2025 WL 2860639 at *6 (D. Or. Oct. 9, 2025) (requiring no separate discussion of a doctor's recommended limitation "of sitting for four hours in an eight-hour workday for thirty minutes at a time" when the ALJ had adequately found the opinion as a whole unpersuasive).

Although Plaintiff has identified points of contention in the ALJ's analysis of how consistent Dr. Singh's opinion is with the record, none of them constitute error as a matter of law.

5. <u>Conclusion</u>

Plaintiff has failed to demonstrate that the ALJ failed to adequately analyze Dr. Singh's opinion before discounting it. The ALJ is not required to revisit this holding upon remand.

**D. Directed Award of Benefits is Inappropriate**

As discussed above, the errors in the ALJ's RFC analysis are not harmless and merit remand. *See supra* VI.A-B. The question becomes whether such remand is for further proceedings or for an award of benefits outright. At no point does Plaintiff articulate a preference when arguing that the ALJ's decision should be "reversed." ECF No. 15 at 15; ECF No. 22 at 14.

The credit-as-true rule authorizes courts to remand with instructions for the ALJ to calculate and award benefits if:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be

> required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. As discussed above, the ALJ's primary errors are in (1) limiting the RFC analysis to "severe" impairments and (2) failing to analyze the medical record or daily activities beyond an unorganized summary thereof. The Court cannot determine whether the ALJ could adequately explain how the record justifies discounting Plaintiff's allegations if given the chance. The credit-as-true rule does not apply, and remand is for further proceedings.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is GRANTED;
2. Defendant's cross-motion for summary judgment (ECF No. 19) is DENIED;
3. The Commissioner's final decision in this matter is VACATED AND REMANDED for further proceedings, including further development of the record in accordance with this decision; and
4. The Clerk of the Court shall enter judgment and close this case.

DATED: August 18, 2026



SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE